HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. CHARLES McCARTY.

No. 958.  Decided January 21, 1901.

1. Contract—Mistake—Parol Evidence—Release of Damages.

A contract releasing all damages from personal injuries received by the maker in a railway wreck can not be set aside or disregarded on parol proof that it was made under the mistaken belief that he had received no injury except to the ankle, so as to permit recovery for injuries to the spine, subsequently developed, for which no adequate compensation was made in the settlement. (Pp. 299-304.)

2. Same.

One who accepts a thing of value in settlement of a claim for personal injuries is, in the absence of fraud or concealment, concluded by the settlement though the final issue may be different from that which was anticipated; the parties take the chances of future development. (Pp. 301-304.)

3. Same—Cases Distinguished.

This case distinguished from those of releases involving distinct causes of action (Lyall v. Edwards, 6 Hurl. & N., 337) or release for certain specified injuries followed by words of general release. (Lumley v. Railway, 6 Am. and Eng. R. R. Cas., N. S., 81.)  (Pp. 302, 303.)

QUESTION CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Waller County.

*Baker, Botts, Baker & Lovett* and *Frank Andrews*, for appellant.—The rule is as ancient as the common law that the terms of a written instrument can not be varied by parol, and when plain and unmistakable in terms, no explanation of a different understanding than that imported by the language used can be made. It is an elementary rule of Mr. Greenleaf. It is an elementary rule of every text writer. It is the rule of every decision in this State, and is modified only in those cases where the instrument is the subject of fraud, and that is upon the theory that the writing does not speak the contract of the parties. In this case there is no pretense that the contract was not fully understood. The cases all sustain this view. Roundtree v. Gilroy, 57 Texas, 176; Bigham v. Talbot, 51 Texas, 450; Floyd v. Branner, 1 White & W. C. C., sec. 135; Belcher v. Mulhall, 57 Texas, 17; Cooper v. McCrimmin, 33 Texas, 384; Bruner v. Strong, 61 Texas, 555; Bedwell v. Thompson, 25 Texas Supp., 246; Wright v. Hays, 34 Texas, 253; Saunders v. Brock, 30 Texas, 421; Smith v. Garrett, 29 Texas, 49; Rockmore v. Davenport, 14 Texas, 602; McMichael v. Jarvis, 78 Texas, 673; Eckford v. Berry, 87 Texas, 421; Collins v. Ball, 82 Texas, 267; Vickery v. Hobbs, 21 Texas, 574; Lanes v. Squyres, 45 Texas, 387; Hunt v. White, 24 Texas, 653; Heidenheimer v. Bauman, 84 Texas, 182;

Lynch v. Ortlieb, 70 Texas, 730; Soell v. Haddin, 85 Texas, 187; Macauley v. Long, 61 Texas, 80.

*Baldwin & Meek*, for appellee.—There was no error in the paragraph of the court's charge set out in the appellant's second assignment of error, for the reason, if a release be couched in terms broad enough to cover all imaginary injuries growing out of a particular railroad wreck in which a passenger is injured, when in truth and in fact the injured passenger and the agents, servants, and surgeons of the railroad only knew of a simple dislocation of an ankle, and the settlement made with no other injury in view, and none suspected by either party, and in fact at the time the injured person has received cord lesion, or concussion of the spine, which destroys his health, and his limbs perish, his speech and hearing are lost to him, said release will not in law or equity bar a recovery for said injury, which was not known to him or to the company, and was not taken into consideration by either, nor intended by either to be settled for. McCarty v. Railway, 21 Texas Civ. App., 568; Lyall v. Edwards, 6 Hurl. & N., 336; Railway v. Artist, 60 Fed. Rep., 365; 20 Am. and Eng. Enc. of Law, 764; Hirschfield v. Railway, L. R. 2 Q. B., div. 1; Mateer v. Railway, 15 S. W. Rep., 970; Cholmondely v. Clinton, 2 Meriv., 173-352; Railway v. Blackmore, L. R., 4 H. L., 610-623; 1 Story Eq. Jur., sec. 145; Phillips v. Clagett, 11 M. & W., 83.

We call the court's attention to the well established rule in this State, that a contract which was executed under a mistake as to material facts, the existence or nonexistence of which influenced either of the parties in the making of the contract, will be set aside on the application of the injured party, and if not entirely set aside, it will be limited to the matters actually considered by the parties at the time of making the contract. Culbertson v. Blanchard, 79 Texas, 492; Pendarvis v. Gray, 41 Texas, 326; Watson v. Baker, 71 Texas, 750; O'Connell v. Duke, 29 Texas, 309; Farenholt v. Perry, 29 Texas, 316; Ramey v. Allison, 64 Texas, 699.

GAINES, Chief Justice.—This case comes to us upon a certified question. The certificate is as follows:

"Appellee, while a passenger on one of appellant's passenger trains, was injured in a wreck caused by the actionable negligence of appellant. He was promptly taken to appellant's infirmary at Houston that his injuries might be dressed and cared for. While there, appellant's claim agent began to negotiate with him for the settlement of his claim against the company. At that time, appellee appeared to have sustained no other injury except a dislocation of his ankle, and it was shown by the evidence that no other injuries were considered by the parties to the settlement and no other injuries entered into and in fact formed any part of the consideration for the settlement, except the loss of a watch, which was included in the settlement at a valuation of $30. Neither the appellant's agents nor appellee knew or suspected injury to any other part of ap-

pellee's person, and appellee exercised reasonable care to ascertain if he was otherwise injured. The sum accepted in settlement was grossly inadequate and out of proportion to the injuries to other portions of his body, which, though at that time unknown, were- shortly thereafter discovered to exist, and appellee could not have been induced to settle for the sum named in the release had he been aware of his real condition. When the amount was agreed upon, appellee executed a release in writing which was prepared by the company's agent for his signature. Said release is in the following language:

" 'Know all men by these presents: That I, Charles McCarty, of the town of Welborn, Texas, for and in consideration of the sum of four hundred and thirty dollars to me in hand paid by the Houston & Texas Central Railroad Company, of the State of Texas, have remised, released, and forever discharged, and by these presents do for myself, my heirs, executors, administrators, and assigns, remise, release, and forever discharge the Houston & Texas Central Railroad Company of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, claims and demands whatsoever, which I had or have now, or which I or my heirs, executors, administrators, or assigns can, shall, or may have by reason of any damage or personal injury sustained by me in the wreck of the south-bound passenger train No. 4, of said Houston & Texas Central Railroad at Fairbanks yesterday morning at 5 o'clock, on which train I was a passenger, and on my way from Welborn to Houston, or by reason of any matter, cause, or thing whatsoever.

" 'In testimony whereof I have hereunto set my hand and seal on this, the twenty-eighth day of April, 1897.

(Signed) " 'CHAS. McCARTY. (L. S.)

" 'Witness: J. R. Stuart, E. L. Adams.'

"Shortly after the execution of this release, appellee discovered that he had sustained injury to his spine and bowels which were of a much graver and more permanent nature than the injury settled for and which would practically destroy his usefulness for the remainder of his life. Whereupon he brought this suit to set aside the release and recover for the additional injuries. The grounds upon which he sought to set it aside were that both he and appellant's agents were mistaken in supposing he had sustained no other injuries than a dislocated ankle; that no other injury save that to the ankle was considered or entered in any way into the settlement; that he could not have been induced to settle had he known of these other and graver injuries, and that believing and having reason to believe that he had no other claim against the company, he was induced to receipt them in full in the general terms used in the release.

"The question of primary liability on the part of appellant and the issue of mistake as affecting the validity of the release in so far as it

purported to be a bar to recovery for the unconsidered injuries, were submitted to a jury and the trial resulted in a verdict for appellee, the recovery being confined by the charge of the court to only such damages as appellee had sustained by reason of the unconsidered injuries, no damages being allowed for the injury to the ankle, which the court held had been settled for in full, as evidenced by the release.

"The question presented and which we respectfully certify is as follows:

"Can the release in question be set aside (except in so far as it evidences a discharge for injuries to the ankle) on parol proof that the parties thereto were mistaken in supposing that the injury to the ankle was the only injury which appellee had sustained, it also being made to appear by parol that notwithstanding the language of the writing no other injury was in the minds of the parties, and that if the other injuries had been known, the release would not have been executed?"

In Gilliam v. Alford, 69 Texas, 267, the court, speaking through the late Chief Justice Stayton and quoting from Pomeroy's Equity, announced the rule in regard to voluntary settlements as follows: "The rule in such cases is, that 'voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge concerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision.' " We are unable to see any circumstance in this case to take the release out of the general rule. The appellee, who was the plaintiff in the court below, had at least the same knowledge and the same means of obtaining knowledge as the appellant, and if there was no fraud in the transaction, the settlement was binding upon him. That where a party who has a claim against another for personal injuries agrees upon a settlement of his claim and accepts a sum of money or other thing of value in settlement of such claim, he is, in the absence of fraud or concealment, concluded by the settlement, is a proposition sustained, as we think, by the great weight, if not by an unbroken line, of authority. We cite some of the cases. Rideal v. Railway, 1 Foster & Fin., 706; Kowalke v. Railway and Electric Light Co., 103 Wis., 472; Seeley v. Traction Co., 179 Pa. St., 334; Alabama, etc., Railway, v. Turnbull (Miss.), 16 So. Rep., 346; Homuth v. Street Railway, 129 Mo., 643. The case first cited, Rideal v. Railway, was very like the case before us, in the respect that the injuries, at the time of the release, appeared trivial, but that there was testimony tending to show that afterwards they proved to be serious and permanent. In the charge to the jury, the court say: "No doubt a man might well be ready to take a certain sum in satisfaction of such injuries as he was

sensible of, which would not be any equivalent for serious and permanent injuries. Still if, in fact, a man has done so, he is bound by his bargain." In the Wisconsin case (Kowalke v. The Electric, etc., Company), the court dispose of the question of a mistake of fact and thus announce the limitations upon the rule, which justifies an interference by the courts upon that ground: "The most philosophical definition we have found is that presented by Pomeroy (Equity Jurisprudence, section 839): 'An unconscious ignorance or forgetfulness of the existence or nonexistence of a fact, past or present, material to the contract.' This definition contains several elements, each of which, as above suggested, must be explained and qualified in its practical application. Thus, the ·ignorance must be unconscious; that is, not a mental state of conscious want of knowledge whether a fact which may or may not exist does so. Kerr, Fraud and Mistake, 432. This idea is involved in, and furnishes a reason for, the exception pointed out by Dixon, C. J., in Hurd v. Hall, 12 Wisconsin, 112, 127, on authority of Kelly v. Solari, 9 Meeson & Welsby, 54, viz: Where a party enters into a contract, ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in the legal sense. These limitations are predicated upon common experience,. that, if people contract under such circumstances, they usually intend to abide the resolution either way of the known uncertainty, and have insisted on and received consideration for taking that chance."

The cases relied upon by counsel for appellee do not, in our opinion, sustain their contention. We·will notice some of them. In Lyall v. Edwards, 6 Hurl. & N., 337, the defendants to an action of trover pleaded a release, and the plaintiff replied, in substance, that the defendants being insolvent, they, in connection with the other creditors and in consideration of an assignment of the property of the defendants for the benefit of all their creditors, executed the release, but that at the time of its execution, without default on their part, they were ignorant that their goods had been converted. Upon demurrer, it was held that the replication was good. There the claim in dispute was a distinct cause of action of which the plaintiffs had no knowledge and the existence of which they had no reason to suspect at the time the discharge was executed. It seems to us the release was properly construed not to embrace such claim. The gist of ruling in Ramsden v. Hylton, 2 Vesey, 304, appears in the following head-note: "General release from a sister to a brother not binding as to particular rights under the marriage settlement, or articles of the parents, the sister being ignorant of them, and the brother having covenanted that he was seised in fee, contrary to the fact." In passing upon the release, Lord Hardwicke says: "The strongest and most material objection is the release; but I am of opinion it would not be construed as a release of this demand, either in point of law, or in a court of equity. First, it is certain, that if a release is given on a particular consideration recited, notwithstanding that the release concludes with general words, yet the law, in order to prevent surprise,

will construe it to relate to the particular matter recited, which was under the contemplation of the parties, and intended to be released." There, too, the matter in dispute was the release of a separate demand. The case of Lumley v. Railway (6 American and English Railway Cases, new series, 81) is more like the case before us. But in that case, the release specified certain injuries but concluded with a general release of all demands growing out of the accident. In their opinion, the court say: "We put our judgment upon the facts stated in this bill, to wit, that both parties supposed complainant had received certain injuries, the extent and character of which were considered and discussed with reference to the time which the injured party would probably lose in consequence thereof. In such a case, if a release is given specifically mentioning the particular injuries known and considered as the basis of settlement, general language following will be held not to include a particular injury then unknown to both parties of a character so serious as to clearly indicate that, if it had been known, 'the release would not have been signed. This jurisdiction is well known, and has frequently been applied in cases of release affecting property rights, both in courts of law and equity." This, it seems to us, is a mere application of the rule announced by Lord Hardwicke in the case of Ramsden v. Hylton, above cited. The same rule was applied in the case of the Union Pacific Railway v. Artist, 60 Federal Reporter, 365. The other cases cited by appellee are less applicable to the facts before us and require, as we think, no especial comment.

The case before us is, in our opinion, clearly distinguishable from Lyall v. Edwards, cited above. There the unknown matter was a separate cause of action, which would not have been concluded by a judgment upon the claims which were in contemplation of the parties at the time the release was executed. Here there is but one cause of action; and if the plaintiff had sued and recovered for the injuries of which he had knowledge at the time of the release, he would have been precluded from an additional recovery.

This case is also clearly to be distinguished from the Lumley case and the other cases on that line. In those cases, the contract was neither set aside nor impaired by reason of any mistake of the parties to the release. There, by a rule of construction, the operation of the release is restricted to the particulars mentioned. Here no particular injuries are mentioned. The release is of all damages which have accrued or which may accrue to the plaintiff by reason of the accident in which he was injured. Here, then, the terms of the release are not to be mistaken and the contract is not open to construction. In the face of such an instrument, it can not be said that all the injuries which might be developed as a result of the accident, whether known or unknown, were not in the contemplation of the parties to the instrument and were not embraced within its terms. In all such cases, the damages are ascertainable in a legal sense, but in fact are uncertain in amount. Until the extent of the injuries has been clearly developed, they may

be more or may be less than appearances would indicate, and therefore in every settlement of the character of that under consideration, the parties take the chances of future development,—the one of paying more than an adequate compensation for the wrong inflicted and the other of receiving less.

Our conclusion is that the release embraces all damages resulting from the injuries of the plaintiff, and that it can not be varied by parol evidence tending to show that other injuries than that to the ankle were not in the contemplation of the parties.

We therefore answer the question in the negative.